Filed 6/26/23  P. v. Avalos CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUBEN JOSE AVALOS,<br><br>Defendant and Appellant. | F085062<br><br>(Tulare Super. Ct. No. VCF091174-02)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from an order of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Kendall Dawson Wasley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Franson, Acting P. J., Smith, J. and De Santos, J.

## INTRODUCTION

In 2002, appellant and defendant Ruben Jose Avalos (appellant) was convicted of attempted premeditated murder with firearm and gang enhancements and was sentenced to an aggregate term of 40 years to life. In 2004, this court affirmed the judgment on direct appeal.

In 2022, appellant filed a petition for resentencing pursuant to Penal Code section 1172.6[1] and alleged he was convicted of attempted murder based on a theory of imputed malice. The trial court appointed counsel, conducted a hearing, and found he was ineligible for resentencing as a matter of law.

We affirm.

## FACTS[2]

"On the afternoon of February 22, 2001, Marciel Jimenez was walking home with three companions after being dropped off by a school bus near the intersection of Avenue

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated. Appellant filed his petition in 2022 pursuant to "section 1170.95." As will be discussed below, the statute was substantively amended, effective on January 1, 2022, and renumbered as section 1172.6 without further change on June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.) As such, we refer to the subject statute by its current number throughout this opinion, except where otherwise indicated.

[2] The following facts are from this court's nonpublished opinion in appellant's direct appeal, *People v. Avalos* (May 11, 2004, F042280). After notice to both parties, this court has also taken judicial notice of this court's record and opinion in appellant's direct appeal. (Evid. Code, § 450, § 452, subd. (d), § 459.) We deny appellate counsel's belated motion to augment the record to include the jury instructions

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*People v. Clements, supra,* 75 Cal.App.5th at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).) We have recited the factual statement from appellant's direct appeal to place his arguments in context and will not rely on that factual statement to resolve his appeal from the trial court's order that found his petition did not state a prima facie case for relief.

2.

308 and Camp Road in Goshen. Jimenez, a member of the Nortenos, was attending Packwood High School. He was enrolled in that school because he had gotten into two fights at his previous school. Jimenez fought people who claimed a different 'color' than Jimenez. Rolando Jaramillo, Edgardo Velez, and Andrew Hernandez were Jimenez's walking companions. As the foursome walked down the street, appellant approached from the other direction. Appellant was driving a gray Buick Regal and had no passengers. Jimenez recognized appellant as an enemy Sureno.

"As the Regal approached, someone exchanged words with appellant and the latter yelled, 'South Side Winos.' While Hernandez and the others kept walking, Jimenez said 'something' back and started walking toward the car. The unarmed Jimenez approached the car and challenged appellant to a fight.

"Jimenez was mad, he tensed up, and he walked fast in a challenging manner. He thought appellant would get out of the vehicle and fight. Instead, with the car 'barely going,' appellant leaned over, sat up, and pointed a handgun at Jimenez through the open driver's side window. The gun was wrapped in a blue bandana. Jimenez saw the gun, changed direction, and moved toward the back of the Regal. He was about to 'take off and start running' when appellant shot him one time in the neck. Jimenez immediately put his hand to his neck, yelled out, and made his way to the nearest house for help. Appellant left the scene in the Regal.

"Jimenez suffered a single gunshot wound to the left side of his neck. … [T]he bullet entered through the front side of the neck and exited out the back, narrowly missing several vital organs…." [¶] … [¶]

"A few days after the shooting, Jimenez, Hernandez, and Jaramillo separately viewed a photographic lineup. Each identified appellant as the shooter…. [¶] … [¶]

"Appellant testified on his own behalf. He had gone to work at 5:00 a.m. on February 22, 2001. That afternoon, he left a taco truck on Camp Drive and drove a Buick Regal southbound preparing to turn onto Avenue 308. Appellant saw four guys raising

3.

up their hands and throwing rocks at the car. They yelled 'fuck you' and said 'a lot of shit.' Appellant pulled over and the four young men surrounded the car. Two were on the driver's side and one was in front of the car. One of the men had a stick and the others threw rocks against the tire rims. Jimenez lifted up his shirt, raised his hands, and challenged appellant to a fight. Others threatened to beat appellant up. Fearing for his life, appellant reached under his seat and grabbed a gun. Appellant pointed the gun out of the open window and the firearm discharged. Appellant said he did not mean to shoot anyone. Rather, he just wanted to scare the attackers." (*People v. Avalos*, *supra*, F042280, fns. omitted.)

## PROCEDURAL BACKGROUND

**The Charges and Start of Trial**

On June 19, 2002, an information was filed in the Superior Court of Tulare County charging appellant with count 1, that he committed attempted premeditated murder on Jimenez; and count 2, that he also committed assault with a firearm on Jimenez; with firearm, great bodily injury, and gang enhancements. No one else was alleged to have committed the offenses.

On November 4, 2002, appellant's jury trial began; he was tried by himself.

**The Jury Instructions**

The court gave CALJIC No. 6.00, that an attempt to commit a crime consists of two elements — "a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."

CALCRIM No. 8.66 stated that appellant was charged in count 1 with attempted murder, murder was the unlawful killing of a human being with malice aforethought, and the following elements must be proved for attempted murder: "A direct but ineffectual act was done by one person towards killing another human being," and "[t]he person committing the crime harbored express malice aforethought, namely a specific intent to kill unlawfully another human being."

4.

CALJIC No. 8.67 stated the elements to find the attempted murder was willful, deliberate, and premeditated:

> " 'Willful' means intentional. 'Deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. 'Premeditated' means considered beforehand. [¶] If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passions or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder."

The jury was also instructed on justifiable and excusable homicide; self-defense; attempted voluntary manslaughter; an actual but unreasonable belief in self-defense, and sudden quarrel or heat of passion, reducing attempted murder to attempted manslaughter; and the elements of count 2, assault with a firearm.

As to counts 1 and 2, the jury was instructed on the elements of the attached enhancements, that he personally and intentionally discharged a firearm, and proximately caused great bodily injury, in the commission of the offenses.

The jury was not instructed on principals or accomplices, aiding and abetting, the felony-murder rule, the natural and probable consequences doctrine, or any theory of imputed malice.

**Convictions and Sentence**

On November 8, 2002, appellant was convicted of count 1, attempted premeditated murder (§§ 187, 664), with personal and intentional discharge a firearm by a principal causing great bodily injury (§ 12022.53, subd. (d)), and a gang enhancement (§ 186.22, subd. (b)); and count 2, assault with a firearm (§ 245, subd. (a)(2)), with a great bodily injury enhancement (§ 12022.7, subd. (a)), personal use of a firearm (§ 12022.5, subd. (a)(1)), and a gang enhancement (§ 186.22, subd. (b)).

5.

On January 9, 2003, the court sentenced appellant to 15 years to life for attempted premeditated murder with a consecutive term of 25 years to life for the personal discharge enhancement.

**Direct Appeal**

On May 11, 2004, this court filed the nonpublished opinion that affirmed the judgment in appellant's direct appeal, *People v. Avalos*, *supra*, F042280, and rejected his instructional and substantial evidence arguments.

**PETITION FOR RESENTENCING**

On June 27, 2022, appellant filed, in pro. per., a petition for resentencing and requested appointment of counsel.

Appellant's supporting declaration consisted of a preprinted form where he checked boxes that stated (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

The court appointed counsel to represent appellant.

**The People's Opposition**

On July 28, 2022, the prosecution filed opposition and argued defendant was ineligible for resentencing as a matter of law because he was convicted of attempted murder as the actual perpetrator and not based on any theories of imputed malice.

**The Court's Ruling**

On September 12, 2022, the trial court convened a hearing on appellant's petition. Appellant was not present but represented by counsel. The parties submitted the matter.

The court denied the petition:

"… I just don't see how [appellant] can make a prima facie here based upon my review of the appellate opinion in the case and the jury instructions that were given at his trial.

"As recited in the appellate opinion, the facts of the case were that [appellant] was alone in a vehicle. [Appellant] shot at someone hitting him in the neck. There's no indication that anybody else whatsoever was involved in this case other than [appellant].

"I went through the jury instructions. There was no theory of imputed malice available to the jury by which they could have convicted [appellant]. So I think the petition that he filed, which is essentially the boilerplate-style petition checking a few boxes, is conclusively rebutted by the record available at this point."

On October 4, 2022, appellant filed a timely notice of appeal.

## DISCUSSION

### I. Delgadillo and Appellate Review

In *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), the California Supreme Court held a *People v. Wende* (1979) 25 Cal.3d 436 analysis is not applicable to a superior court's order that denies a petition for postconviction relief under section 1172.6. (*Delgadillo*, at p. 222.) *Delgadillo* held that instead of using the process outlined in *Wende*, appointed counsel and the appellate court should do the following: "When appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter." (*Delgadillo*, at pp. 231–232.)

7.

"If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues. [Citations.] If the defendant does not file a supplemental brief or letter, the Court of Appeal may dismiss the appeal as abandoned. [Citation.] If the appeal is dismissed as abandoned, the Court of Appeal does not need to write an opinion but should notify the defendant when it dismisses the matter. [Citation.] While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Delgadillo, supra*, 14 Cal.5th at p. 232.)

*Analysis*

On April 3, 2023, this court sent an order to appellant stating his appellate counsel had filed a brief under *Wende* that indicated no arguable issues had been identified for appeal; previously, when an appellant filed an appeal from the denial of a section 1172.6 petition, and counsel filed a *Wende* brief, this court performed an independent review of the record to determine whether any error occurred; the California Supreme Court determined in *Delgadillo* that independent *Wende* review is not required for appeals from the denial of section 1172.6 petitions; in accordance with the procedures set forth in *Delgadillo*, appellant had 30 days in which to file a supplemental brief or letter raising any arguable issues he wanted this court to consider; and if we did not receive a letter or brief within that 30-day period, this court may dismiss the appeal as abandoned.

On May 5, 2023, appellant filed a letter brief with this court that purported to raise issues in this appeal. While his brief was filed slightly more than 30 days after our order, we exercise our discretion to review appellant's claims.

8.

## II. The Trial Court Correctly Denied Appellant's Petition

First, the court complied with section 1172.6 by appointing counsel, receiving further briefing, conducting a hearing on the petition, and giving reasons for finding the petition did not state a prima facie case.

Second, when the court denied the petition, it may have improperly made factual findings based on this court's opinion in appellant's direct appeal. To demonstrate prejudice by making factual findings in the denial of a section 1172.6 petition before the issuance of an order to show cause (OSC), appellant must show it is reasonably probable that, absent the error, his petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

In determining whether a petitioner made a prima facie case for relief, the court may review the record of conviction that allows the court "to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that … culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra,* 11 Cal.5th at pp. 971–972 & fn. 6.)

As explained above, the record and opinion from appellant's direct appeal are part of the record of conviction. (*Lewis, supra*, 11 Cal.5th at p. 972.) The jury instructions are also part of the record of conviction and may be reviewed to make the prima facie determination. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1252; *People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

We find any error was not prejudicial. As the trial court correctly noted, appellant was charged and convicted of attempted premeditated murder. No other defendants were charged in the information, and he was tried by himself. The jury was instructed that to convict him of attempted murder, the prosecution had to prove he took a "direct but

9.

ineffectual act … towards killing another human being," and that he "harbored express malice aforethought, namely a specific intent to kill unlawfully another human being." To find the premeditation allegation true, the jury had to find appellant acted with "a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passions or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder." The jury was not instructed on felony murder, natural and probable consequences, principals and accomplices, or any theories of imputed malice.

We thus conclude the entirety of the instructions reflect appellant was charged and convicted of attempted premeditated murder based on his own express malice, and not any theories of imputed malice. To the extent the court erroneously made factual findings, the error is not prejudicial.

In his letter brief to this court, appellant stated that he accepted that he committed "wrong doings in my poor actions at the time of the crime," and he did not justify or minimize his conduct. However, appellant further stated he did not commit a premeditated crime, and instead it was the result of "poor actions on my part under a sudden heat of passion." Appellant stated he had already served 21 years in prison and asked this court to reconsider his aggregate term of 40 years.

" 'The purpose of [section 1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) The jury was instructed on attempted manslaughter as a lesser included offense based on a sudden quarrel or heat of passion, the jury convicted him of attempted murder and found the premeditation allegation true, and appellant cannot relitigate these issues in a section 1172.6 petition.

10.

## DISPOSITION

The trial court's order of September 12, 2022, denying appellant's petition for resentencing, is affirmed.